**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JESSICA EDWARDS, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| *vs.* | § § | |
| DIVERSIFIED ADJUSTMENT SERVICE, INC.; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; and JOHN DOES 1-10, | § § § § § | Civil Action No. 1:22-cv-00699 |
| Defendants. | § § | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND TEXAS DEBT COLLECTION ACT, AND DEMAND FOR JURY TRIAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff, Jessica Edwards, individually and on behalf of all others similarly situated, by way of this Complaint against Defendants, Diversified Adjustment Service, Inc. ("Diversified"), Travelers Casualty and Surety Company of America ("Travelers"), and JOHN DOES 1-25 ("DOES"), states:

## I.    NATURE OF THE ACTION

1.    Plaintiff, individually and on behalf of the class she seeks to represent, and demanding a trial by jury, against Defendants who used unfair, unconscionable, false, deceptive, and misleading practices, and other illegal practices, in connection with their attempts to collect alleged debts from her and other similarly situated consumers without disclosing the debts being collected are time-barred. Plaintiff alleges the Defendants' collection practices violate the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p and Texas Debt Collection Act (TDCA), Tex. Fin. Code § 392, *et seq.*

2.      The FDCPA regulates the behavior of collection agencies who attempt to collect debts asserted to be owed or due another. The United States Congress found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

3.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. In reviewing an FDCPA complaint, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard, assuming that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *McMurray v. ProCollect, Inc*., 687 F.3d 665 (5th Cir. 2012).

4.      To prohibit deceptive and unfair practices, the FDCPA, at 15 U.S.C. § 1692c, governs how debt collectors may communicate with consumers. Among these *per se* violations are communicating with consumers without the consumer's prior consent given directly to the debt collector or the express permission of a court of competent jurisdiction, if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, 15 U.S.C. § 1692c(a)(2).

5.      To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among these *per se* violations are: making false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A); threatening to take any action that

cannot legally be taken or is not intended to be taken, 15 U.S.C. § 1692e(5); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

6.    To prohibit unconscionable and unfair practices, the FDCPA at 15 U.S.C. § 1692f, outlaws the use of unfair or unconscionable means to collect or attempt to collect any debt and names a non-exhaustive list of certain *per se* violations of unconscionable and unfair collection conduct. 15 U.S.C. §§ 1692f (1)-(8).

7.    The TDCA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices when collecting a consumer debt. Tex. Bus. & Com. Code Ann § 17.50; *Cushman v. GC Services, L.P.*, 397 Fed. Appx. 24 (5th Cir. 2010) (discussing the "tie-in" provision between the TDCA and deceptive practices Acts).

8.    This case involves an obligation, or an alleged obligation, primarily for personal, family, or household purposes, and arising from a transaction or alleged transaction. As such, this action arises out of "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

9.    Plaintiff, on behalf of herself and others similarly situated, seeks statutory damages, injunctive relief, attorney fees, costs, and all other equitable or legal relief this Court deems appropriate under the FDCPA, TDCA, and other common law or statutory regimes.

## II.    PARTIES

10.    Plaintiff is a natural person.

11.    At all times relevant to this Complaint, Plaintiff was a citizen of Texas, and resided in Travis County, Texas.

12.    Diversified is a for-profit corporation organized under Minnesota law.

13.    Diversified maintains its principal place of business at 600 Coon Rapids Blvd. NW, Minneapolis, Minnesota.

14.     Diversified may be served with process in the State of Texas through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

15.     Travelers is a Connecticut corporation operating as an unlicensed casualty and surety company within the State of Texas.

16.     Travelers maintains its principal business address at One Tower Square, Hartford, Connecticut 06183.

17.     Texas Finance Code § 392.101(a) provides "[a] third-party debt collector…may not engage in debt collection unless the third-party debt collector… has obtained a surety bond issued by a surety company authorized to do business in Texas."

18.     Texas Finance Code § 392.101(b)(1) provides that "[t]he third-party debt collector's surety bond must be in favor of any person who is damaged by a violation of [Texas Finance Code § 392, *et seq*.]."

19.     Texas Finance Code § 392.102 provides that "[a] person who claims against a bond for violation of [Texas Finance Code § 392, *et seq*.] may maintain an action against the third-party debt collector…and against the surety."

20.     Travelers issued Diversified a bond in favor of all persons damaged by Diversified's TDCA violations.

21.     Plaintiff, and the putative class members she seeks to represent, have been, and continue to be, damaged by Diversified's TDCA violations and, therefore, she is claiming against the bond Travelers issued to Diversified.

22.     Travelers is liable to Plaintiff, and the putative class members she seeks to represent, to the full extent of Diversified's liability up to the $10,000.00 limit of its bond.

23.     DOES are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff, shut she will amend her complaint by inserting their true names and capacities once they are ascertained.

24.     DOES are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with, conspired with, engaged in, and oversaw Diversified's violative policies and procedures used by its employees that are the subject of this Complaint. DOES personally control, and engaged in, the illegal acts, policies, and practices used by Diversified and, thus, personally liable for all wrongdoing alleged in this Complaint.

### III.     JURISDICTION AND VENUE

25.     This Court's jurisdiction arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

26.     Supplemental jurisdiction for Plaintiff's state law claims arises under 28 U.S.C. § 1367.

27.     Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred within this federal judicial district, and because the Defendants regularly transact business within this federal judicial district and, therefore, reside in this federal judicial district within the meaning of 28 U.S.C. § 1391(b) and (c).

### IV.     FACTUAL ALLEGATIONS

28.     Diversified is regularly engaged in the collection of defaulted consumer debts.

29.     Diversified is a business whose principal purpose is the collection of defaulted consumer debts owed to others.

30.     Diversified uses the mail, telephone, internet, and other instruments of interstate commerce when attempting to collect defaulted consumer debts.

31.     Plaintiff allegedly incurred a financial obligation to City of Killeen EMS for personal, family, or household purposes—namely, for personal medical services ("Debt").

32.     Diversified contends the Debt is in default.

33.     In or about January 2022, Plaintiff discovered Diversified was reporting the Debt

as a negative tradeline to national credit reporting agencies.

34.    Diversified was falsely reporting the Debt to national credit reporting agencies as being opened in August 2020 when, in fact, the Debt was allegedly incurred years earlier.

35.    Diversified's negative credit reporting tradeline regarding the Debt disclosed little information but it did list Diversified's contact information.

36.    Plaintiff had never previously received any communications from Diversified regarding the Debt and, therefore, she called Diversified upon discovering its negative tradeline and disputed the Debt.

37.    In response to Plaintiff's dispute, Diversified mailed her a letter dated February 24, 2022 ("2/24/22 Letter").

38.    A true copy of the 2/24/22 Letter is attached as *Exhibit A*, except the undersigned has redacted portions of it.

39.    *Exhibit A* was mailed on or after the Letter's date.

40.    Diversified mailed Plaintiff *Exhibit A* to collect the Debt.

41.    *Exhibit A* was the first communication Plaintiff received from Diversified concerning the Debt.

42.    Under Chapter 16.004(a)(3) of the Texas Civil Practice & Remedies Code, a lawsuit for breach of contract must be filed not later than four years after the day the cause of action accrues.

43.    As of February 24, 2022, over four years had passed since the Debt was in default.

44.    *Exhibit A* is false, deceptive, and misleading to unsophisticated consumers like Plaintiff because it fails to disclose the Debt is time-barred and, thus, legally unenforceable.

45.    Diversified subsequently mailed Plaintiff a letter dated May 15, 2022 in a further effort to collect the Debt ("5/15/22 Letter").

46.    A true copy of the 5/15/22 Letter is attached as ***Exhibit B***, except the undersigned has redacted portions of it.

47.    ***Exhibit B*** was mailed on or after the Letter's date.

48.    As of May 15, 2022, over four years had passed since the Debt was in default.

49.    ***Exhibits A*** and ***B*** are identical with the exception of the date of the letters.

50.    ***Exhibit B*** is false, deceptive, and misleading to unsophisticated consumers like Plaintiff because it fails to disclose the Debt is time-barred and, thus, legally unenforceable.

51.    Neither ***Exhibit A*** nor ***B*** informed Plaintiff how any partial payment would be applied to the Debt.

52.    Neither ***Exhibit A*** nor ***B*** informed Plaintiff that paying any amount toward the the Debt might restrat the statute of limitations for the creditor to sue her.

53.    Diversified undertakes various means to collect time-barred debts from Texas consumers including, but not limited to, reporting negative tradelines to the national credit reporting agencies regarding unsophisticated consumers' time-barred debts but does not send a written communication unless the consumer calls to inquire about the tradeline.

54.    Diversified saves substantial money, and increases its profit margins, by reporting negative credit tradelines to national credit reporting agencies regarding unsophisticated consumers' time-barred debts and then waiting until the consumer calls Diversified to inquire about its tradeline before incurring the time and expense of sending a written communication to collect an unenforceable, hard to collect, debt.

55.    In addition to its strategy of parking negative tradelines on unsophisticated consumers' credit reports and waiting on them to call, Diversified also increases its profit margins and gains an unfair advantage over honest debt collection companies by sending those inquiring consumers a written communication—in the form of ***Exhibits A & B***—which fail to inform consumers their debt is legally unenforceable, that the creditor will not sue them to

collect it, and that a payment might restart the statute of limitations.

56.     Neither Diversified nor the Debt's creditor has any legal basis to file a lawsuit against Plaintiff or other similarly situated Texas consumers to collect defaulted debts that are more than four years old, as those debts are legally non-enforceable.

57.     Diversified regularly attempts to collect defaulted consumer debts on which the statute of limitations has expired.

58.     *Exhibits A & B* fail to disclose the Debt was barred by the statute of limitations and not legally enforceable.

59.     *Exhibits A & B* fail to disclose the creditor will not sue her to collect the Debt.

60.     It is Diversified's policy and practice to send Texas consumers letters, in the form of *Exhibits A & B*, that seek to collect time-barred debts without disclosing that the debt is time-barred and that the creditor will not sue to collect it.

61.     *Exhibits A & B* is false, deceptive, and misleading to unsophisticated consumers like Plaintiff because they fail to disclose how a partial payment on the Debt would be applied.

62.     *Exhibits A & B* is false, deceptive, and misleading to unsophisticated consumers like Plaintiff because they fail to disclose that a partial payment on the Debt could reinstate the applicable statute of limitations.

63.     Plaintiff understood *Exhibits A & B*, as would an unsophisticated consumer, that the Debt remained legally enforceable and she continued to have a legal obligation to pay it.

64.     Plaintiff understood *Exhibits A & B*, as would an unsophisticated consumer, that the creditor may sue her if she did not pay the Debt or call Diversified to make payment arrangements.

65.     Plaintiff was alarmed, confused, misled, and worried when she received *Exhibits A & B*, as an unsophisticated consumer would be, and therefore she expended time and money in seeking attorney advice because she wanted to satisfy her legal obligations and avoid being sued.

66.     The Federal Trade Commission has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a collector tells a consumer that she owes money and demands payment, it may create the misleading impression that the collector can sue the consumer in court to collect that debt." (*See* http://www.ftc.gov/opa/2012/01/asset.shtm).

67.     In early 2012, the FTC entered into a consent decree with Asset Acceptance requiring that it disclose to consumers when it is attempting to collect debts that are barred by the statute of limitations. *United States of America (For the Federal Trade Commission) v. Asset Acceptance, LLC*, Case No. 8:12-cv-182-T-27EAJ (M.D.Fla.).

68.     On October 1, 2012, the Consumer Financial Protection Bureau, which has taken over much of the FTC's enforcement responsibility and has been granted rule-making authority with respect to debt collection, the Federal Deposit Insurance Corporation, the Federal Reserve Board, and the Office of the Comptroller of the Currency entered into consent orders with three American Express-related entities requiring disclosure that debts they attempt to collect were time-barred. 2012-CFPB-0002; 2012-CFPB-0003; 2012-CFPB-0004. The orders require that "the Bank shall continue to provide disclosures concerning the expiration of the Bank's litigation rights when collecting debt that is barred by the applicable state statutes of limitations...." (2012-CFPB-0002, p. 6 of 35, 2012-CFPB-0003, p. 5 of 28).

69.     The October 1, 2012 orders further require disclosure of "all material conditions, benefits and restrictions concerning any offer of settlement. . . ." (2012-CFPB-0002, p. 7 of 35, 2012-CFPB-0003, p. 6 of 28). Thus, they recognize that "settlement offers" that fail to disclose material information may be misleading.

70.     On January 30, 2013, the FTC issued its report, *The Structure and Practices of the Debt Buying Industry*, available at http://www.ftc.gov/os/2013/01/ debtbuyingreport.pdf. The report reaffirms its position in the *United States of America v. Asset Acceptance, LLC*, No. 8:12-

cv-182-T-27EAJ (M.D. Fla. 2012), *American Express Centurion Bank* (FDIC-12-315b, FDIC-12-316k, 2012-CFPB-0002), *American Express Bank, FSB* (2012-CFPB-0003) and *American Express Travel Company, Inc.* (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

71.    The report cites to a study (Timothy E. Goldsmith & Natalie Martin, *Testing Materiality Under the Unfair Practices Acts: What Information Matters When Collecting Time-Barred Debts?*, 64 Consumer Fin. L.Q. Rep. 372 (2010)) that establishes the disclosure that a debt is time barred in a debt collection letter is material to the consumer.

72.    Diversified and its officers, directors, partners, and owners directly authorized, created, instituted, implemented, and controlled the violative policies and procedures used by the other Defendants that are the subject of this class action.

## V.    CLASS ALLEGATIONS

73.    Plaintiff brings this action individually and as a class action on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23.

74.    Subject to discovery and further investigation which may cause Plaintiff to modify the class definition to be more or less inclusive, she defines the "Class" to include:

> All natural persons with a Texas address to whom Diversified mailed a letter between May 9, 2020 and May 30, 2022, in the form of ***Exhibits A & B***, which sought to collect a debt, and the last payment on the debt occurred more than four years prior to the date of the letter.

Plaintiff also defines a "Collection Complaint Subclass" to include:

> Each person who is a Class member but whose collection letter, in the form of ***Exhibits A & B***, was sent between May 9, 2021 and May 30, 2022.

75.    The Class and Subclass exclude each person who, prior to the date this action is certified to proceed as a class action, either (a) died, (b) obtained a discharge in bankruptcy, (c) commenced an action in any court against Defendants alleging a violation of the FDCPA or TDCA based on a template letter, or (d) signed a general release of claims against Diversified. The Class also excludes Plaintiff's counsel, or an employee or family member of her counsel.

76.    Based on discovery and further investigation (including, but not limited to, disclosure of class size and net worth), Plaintiff may, in addition to moving for class certification using modified definitions of the Class and Claims, seek class certification only as to particular issues as permitted under Fed. R. Civ. P. 23(c)(4).

77.    Each Class member's identity is readily ascertainable from Diversified's business records.

78.    This action is brought, and may properly be maintained as, a class action under Fed. R. Civ. P. 23(a) because there is a well-defined community interest in the litigation in that:

      78.01.    *Numerosity*. The Class and Subclass members are so numerous and geographically disbursed that joinder of all members is impractical because there are more than 40 such Class and Subclass members.

      78.02.    *Commonality*. Common questions of law and fact exist as to all Class and Subclass members, the principal issues are: whether Diversified's conduct, as described above, was the same or substantially similar with respect to its attempts to collect debts from the Plaintiff and Class members; and whether such conduct violated the FDCPA and TDCA.

      78.03.    *Typicality*. Plaintiff's claims are typical of Class and Subclass members' claims because the claims arise from Diversified's standardized course of conduct as set forth in the *Factual Allegations*.

78.04.    *Adequacy.* Plaintiff will fairly and adequately protect Class members'

interests because her interests are not averse to the absent class members

and because she is committed to vigorously litigating this matter. Plaintiff

retained counsel experienced in handling consumer lawsuits, complex legal

issues, and class actions.

79.    Certification of a Class under Fed. R. Civ. P. 23(b)(2) is appropriate in that a

determination that Diversified's written communications to Texas consumers in the form of

***Exhibits A & B*** violate Tex. Fin. Code §§ 392.304(a)(8) or 392.304(a)(19) would permit

Plaintiff and the Class to obtain injunctive relief under Tex. Fin. Code § 392.403(a)(1).

80.    This action may also be maintained as a hybrid class action under

Fed. R. Civ. P. 23(b)(3) because the questions of law and fact common to all Sub-Class members

predominate over questions affecting any individual member, and a class action is superior to

other available methods for the fair and efficient adjudication of the controversy. The individual

joinder of all Class members is impracticable, class action treatment will permit a large number

of similarly situated persons to efficiently prosecute their common claims in a single forum

without unnecessary duplication of effort and expense that individual actions engender, an

important public interest is served by addressing the matter as a class action, substantial expenses

to the litigants and to the judicial system will be realized, and difficulties are unlikely in the

management of a class action.

## VI.    COUNT ONE: VIOLATION OF THE FDCPA

81.    The Factual Allegations are incorporated by reference.

82.    Diversified is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

83.    The Debt is a "debt" within the meaning of 15 U.S.C. § 1692a(5).

84.    Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

85.    ***Exhibit A*** is a "communication" within the meaning of 15 U.S.C. § 1692a(2).

86.     ***Exhibit B*** is a "communication" within the meaning of 15 U.S.C. § 1692a(2).

87.     Defendants violated the FDCPA with respect to Plaintiff and Subclass members.

88.     Such FDCPA violations regarding ***Exhibits A & B*** include, but are not limited to:

88.01.     Using false, deceptive, and misleading representations and means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

88.02.     Falsely representing the character, amount, or legal status of any debt, in violation of 15 U.S.C. § 1692e(2)(A);

88.03.     Threatening to take any action that cannot legally be taken in violation of 15 U.S.C § 1692(5);

88.04.     Using false representations and deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10); and

88.05.     Using unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692f.

## VII.    COUNT TWO: VIOLATION OF THE TDCA

89.     The Factual Allegations are incorporated by reference.

90.     Diversified is engaged in the act and/or practice of "debt collection" within the meaning of Tex. Fin. Code § 392.001(5).

91.     Diversified is a "debt collector" as defined by Tex. Fin. Code § 392.001(5).

92.     Diversified is a "third-party debt collector" as defined by Tex. Fin. Code § 392.001(7).

93.     The Debt is a "consumer debt" as defined by Tex. Fin. Code § 392.001(2).

94.     The Debt is a "charged-off debt" as defined by Tex. Fin. Code § 392.307(1).

95.     Plaintiff is a "consumer" within the meaning of Tex. Fin. Code § 392.001(1).

96.     Defendants violated the TDCA with respect to Plaintiff and the Class members.

97.    Such TDCA violations regarding *Exhibits A & B* include, but are not limited to:

97.01.    Misrepresenting the character, extent, or amount of a consumer debt in violation of Tex. Fin. Code § 392.304(a)(8);

97.02.    Using a false representation or deceptive means to collect a debt in violation of Tex. Fin. Code § 392.304(a)(19); and

97.03.    Failing to provide consumers with notice required by Tex. Fin. Code § 392.307(c).

98.    Diversified's illegal conduct invaded Plaintiff's rights which are protected by the TDCA, the invasion of which caused injury-in-fact.

## VIII.   PRAYER FOR RELIEF.

99.    WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendants as follows:

**A.    *With respect to Count One:***

99.01.    Certifying that this action may be maintained as a class action under Fed. R. Civ. P. 23 including defining the Subclass, and Subclass claims, and appointing Plaintiff to represent the Class and her attorneys as Class counsel;

99.02.    Awarding Plaintiff and Subclass members such actual damages as may be proven under 15 U.S.C. § 1692k(a)(1)

99.03.    Awarding Plaintiff statutory damages under 15 U.S.C. § 1692k(a)(2)(A) and § 1692k(a)(2)(B)(i);

99.04.    Awarding Subclass members statutory damages under 15 U.S.C. § 1692k(a)(2)(B)(ii);

99.05.    Awarding Plaintiff an incentive payment for her service to the Subclass as determined after judgment is entered in favor of the Subclass;

99.06.    Adjudging this action is a successful action under 15 U.S.C.

§ 1692k(a)(2)(B)(3) and awarding her reasonable attorneys' fees

including litigation expenses; and

99.07.    For such other and further relief the Court determines is just and proper.

**B.    *With respect to Count Two:***

99.08.    Certifying this action to be maintained as a class action under

Fed. R. Civ. P. 23 including defining the Class and Class claims, and

appointing Plaintiff as Class representative and her attorneys Class

counsel;

99.09.    Awarding injunctive relief under Tex. Fin. Code § 392.403(a)(1) to

restrain Diversified's further TDCA violations as alleged herein;

99.10.    Awarding such actual damages as may be proven to Plaintiff and

members of the Class under Tex. Fin. Code § 392.403(a)(2);

99.11.    An Order directing Travelers to issue payment on the bond it issued

Diversified in favor of Plaintiff and the Class in an amount to be

determined at trial, but not to exceed $10,000.00;

99.12.    Awarding Plaintiff an incentive payment for services to the Class in an

amount the Court determines after judgment is entered for the Class;

99.13.    Adjudging Plaintiff successfully maintained an action under Tex. Fin.

Code § 392.403(a), and awarding her reasonable attorney's fees and

costs under Tex. Fin. Code § 392.403(b); and

99.14.    For such other and further relief the Court determines is just and proper.

## IX.    JURY DEMAND.

100.    Demand is hereby made for trial by jury.


Dated: July 14, 2022                              Respectfully submitted,

*s/ Andrew T. Thomasson*

Andrew T. Thomasson (NJ Bar No. 048362011)
Francis R. Greene (IL Bar No. 6272313)
Benjamin T. Trotter (TX Bar No. 24082567)
THOMASSON PLLC
16414 San Pedro Avenue, Suite 700
San Antonio, TX 78232-2272
Telephone: (973) 312-0774
Facsimile:  (973) 559-5779
Email: Andrew@Thomassonpllc.com
Email: Francis@Thomassonpllc.com
Email: Ben@Thomassonpllc.com

Brent A. Devere (TX Bar No. 00789256)
LAW OFFICES OF BRENT A. DEVERE
1411 West Avenue, Suite 200
Austin, Texas 78701
Telephone: (512) 457-8080
Facsimile:  (512) 457-8060
Email: BDevere@1411west.com

*Attorneys for Plaintiff, Jessica Edwards*